IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DEVELOPMENTAL SERVICES OF NEBRASKA, | ) ) ) | |
| Plaintiff, | ) ) | 4:04CV3272 |
| v. | ) ) | |
| CITY OF LINCOLN, and DENNIS HOHBEIN, | ) ) ) | MEMORANDUM AND ORDER |
| Defendants. | ) ) | |

## INTRODUCTION

The plaintiff, Developmental Services of Nebraska ("DSN") has filed suit against the City of Lincoln ("City") alleging the City, acting in concert with the defendant State Fire Marshal Dennis Hohbein, violated the Fair Housing Act ("FHAA"). 42 U.S.C. § 3601 et seq, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq, and the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq. DSN alleges the City imposed and continues to impose stricter terms and conditions on housing for disabled persons than those applied to housing for persons without disabilities, and that in accordance with these standards, has refused to issue permits to DSN to operate homes for the disabled, failed to consider DSN's requests for reasonable accommodations, and delayed the issuance of appropriate and necessary permits for DSN to operate such homes.

DSN alleges the enforcement of the City's housing ordinances discriminates against disabled persons with respect to housing, disparately impacts the housing opportunities of disabled persons living in the City, and the City's discriminatory conduct in enforcing these ordinances and its refusal to grant, or even

consider, requests for reasonable accommodations was intentional, willful, and performed with disregard for the rights of others. The suit seeks declaratory and injunctive relief, compensatory damages, punitive damages, and attorney fees.  See filing 78 (Amended Complaint).

Pending before me is the plaintiff's motion to compel responses to its second set of document production requests served on the City.  Filing 82.  The plaintiff is moving to compel responses to Request Nos. 1 through 5, and DSN's "Request to Enter Land."[1]  DSN also moves to recover the expenses and attorneys fees it incurred in bringing this motion.  For the reasons discussed below, I shall grant the motion to compel as to Requests Nos. 1 through 5, deny the motion as to DSN "Request to Enter Land," and deny DSN's request for attorney fees and expenses.

ANALYSIS

A.   Requests for Production Nos. 1 though 5.

Production requests 1 though 4 are directed specifically to the November 14, 2005 City Counsel hearing on DSN's requests for a reasonable accommodation, and demand production of "[a]ll documents created, received, reviewed, used, or otherwise accessed by the members of the City Council" as they pertain to:

1) preparing to consider the requests, (Request No. 4);
2) considering public hearing testimony, (Request No. 2);

---

[1] The City raised no objection and responded to Request No. 6.  Request No. 6 is therefore not at issue on this motion to compel.

3) voting on the requests, (Request No. 3); or

4) relating in any way to the requests, (Request No. 1).

Filing 83, Ex. 2 (Amended Response to Plaintiff's Second Set of Requests for Production of Documents).  Request No. 5 asks the City to produce documents relating to the City's consideration, review, recommendation, and decisions on requests for reasonable accommodation made by Plaintiff after August 1, 2004, "including, but not limited to, documents created, received, reviewed, used or otherwise accessed by any City employee or official and any audio recordings, minutes and official transcripts of each Planning Board and City Council meeting, both public and non-public."  Filing 83, Ex. 2 (Amended Response to Plaintiff's Second Set of Requests for Production of Documents).

As to Requests 1 though 5, the City has raised the following objections:

(a) The requested documents are privileged under the doctrine of absolute legislative immunity and/or quasi-judicial immunity;

(b) The requested documents are neither relevant nor reasonably calculated to lead to relevant and admissible evidence as review of Plaintiff's claim of discrimination based upon failure to grant a reasonable accommodation is limited to review of the public record.  Lapid-Laurel, LLC v. Zoning Bd. Of Adjustment of the Township of Scotch Plains, 284 F.3d 441 [sic], 450-451 (3d Cir. 2002).  In addition, the requested documents are not relevant nor reasonably calculated to lead to relevant and admissible evidence as Plaintiff's claim of discrimination against the City for failing to grant the requested reasonable accommodation does not turn on the City's intent or actual motive.  Peebles v. Potter, 354 F.3d 761, 766-767 (8th Cir. 2004).

(c) The request for production fails to designate the documents to be produced with reasonable certainty or particularity.  Broad and undirected requests for all documents which relate in any way to the complaint are

3

regularly stricken as too ambiguous.  <u>St. Paul Ins. Co.</u>
<u>v. Commercial Fin. Corp</u>., 198 F.R.D. 508, 514 (N.D.Ia.
2000).

(d) The requested documents are not relevant to this
lawsuit as DSN's request for reasonable accommodation
from the City's separation requirement between group
homes and the State Fire Marshal's Life Safety Code for
4000 Lindsey Circle, 3912 South 20th Street, and 2440
SW 18th Street are moot as those requests have been
granted or are no longer necessary; DSN's request for
reasonable accommodation with respect to 3800/3806 NW
50th Street are moot as DSN has complied with the Life
Safety Code requirements; and DSN's request for
reasonable accommodation from the State Fire Marshal's
Life Safety Code with respect to 416 North Coddington
Avenue, 424 North Coddington Avenue, 1661 Timber Ridge
Road, and 5516 Hunts Drive are moot as those requests
have been granted.

Filing 83, Ex. 2 (Amended Response to Plaintiff's Second Set of
Requests for Production of Documents).  The City further
"reserve[d] the right to object to the requested production on
the basis that such production would be overly burdensome and
expensive, and further reserve[d] the right to assert other
privileges, including but not limited to attorney-client work
product, at a later date if necessary."  Filing 83, Ex. 2
(Amended Response to Plaintiff's Second Set of Requests for
Production of Documents).

Notwithstanding these objections, the City's also responded
by stating it provided documents responsive to the second set of
production requests when it answered the plaintiff's first set of
discovery; advised the plaintiff that the documents already
provided can also be reviewed on the City of Lincoln's website at
http:www.lincoln.ne.gov/city/council/agenda/history.htm., and as
to certain properties listed in Request No. 5, advised the
plaintiff of documents either previously provided, available for
review at the City Attorney's office, or available for purchase

4

from 5-City TV Studio/Video Services.  Filing 83, Ex. 2 (Amended
Response to Plaintiff's Second Set of Requests for Production of
Documents).

The plaintiff has received the public record maintained by
the City Clerk's office and the City Council office regarding
DSN's requests for reasonable accommodation for 424 North
Coddington Avenue, 1661 Timber Ridge Road, and 5516 hunts Drive
(bill Nos. 05R-271, 05R-272, and 05R-273).  The public record
disclosed includes:

- the bill (ordinance or resolution), fact sheet setting
forth the purpose of the bill, and the original
documents attached to the ordinance or resolution when
submitted for introduction, as supplemented by any
documents and letters received by the City Clerk
through U.S. or inter-office mail;

- the Directors Agenda, which includes information,
reports, e-mails, and messages sent to the City Council
office by U.S. mail or e-mail from a variety of sources
including City staff and the citizens of Lincoln;
mayoral news releases and correspondence to the City
Council; communications from the City Clerk to the City
Council; council member requests for information;
correspondence addressed to one or more individual
Council members or to the Council as a whole; and
reports and correspondence from City departments to the
Council;

- items related to the Council's agenda and received in
the City Council office after the Directors Agenda was
prepared and before the Monday morning Director's
Meeting convened (Addendum to Director's Agenda);

- the Council's Noon Agenda with minutes pertaining to
the weekly Pre-Council, Directors, and Noon policy and
briefing sessions;

- documents distributed to the City Council during the
public hearing; and

- The audio and videotapes of the November 14, 2005 Council meeting, with the audiotapes transcribed by staff in the City's attorney's office.

Filing 85, Ex. A (Ross affidavit), ¶¶ 2-3, 6; Ex. B (Grammar affidavit) ¶¶ 3-5; Ex. D (Babb affidavit), ¶¶ 1-3; Ex. F (Peo affidavit) ¶ 3.  An electronic version of the agenda and accompanying attachments is posted in .pdf format on the City's website at www.lincoln.ne.gov/city/council/agenda/history.  Ex. B (Grammar affidavit) ¶ 7.

Letters or e-mails sent from or directly to a Council member, without a copy sent or forwarded to the Council office, are not part of the record maintained by the City Clerk or the City Council's office.  Ex. B (Grammar affidavit) ¶ 6.  These records are therefore not included in the public record and have therefore not been produced by the City.  Filing 85, Ex. F (Peo affidavit) ¶ 4.

1.   Privileges Arising from Absolute Legislative Immunity And/or Quasi-Judicial Immunity.

The City opposes further document production based on a claim that City Council members are afforded absolute legislative or quasi-judicial immunity from suit and have a testimonial and evidentiary privilege arising from that immunity.  The City therefore claims that as to any responsive documents held by Council members and not forwarded or copied to the offices of the City Clerk and City Council, and therefore not already produced as part of the public record, such documents cannot be obtained through discovery.  In contrast, DSN claims the Council members made an administrative decision in denying DSN's request for reasonable accommodation, and they are therefore not afforded absolute immunity.

6

I note at the outset that the individual council members are not named as defendants, and immunity was not raised as an affirmative defense by the City.[2]  However, if immunity shields from discovery the deliberative and communicative processes of the City Council members in deciding to deny DSN's request for an accommodation, then immunity bars discovery of information from the individual Council members irrespective of whether they are named as defendants.  DSN cannot circumvent the doctrine of immunity by declining to name as defendants the individual members of a legislative body.  Schlitz v. Com. of Va., 854 F.2d 43, 46 (4th Cir. 1988)("The purpose of [legislative immunity] is to prevent legislators from having to testify regarding matters of legislative conduct, whether or not they are testifying to defend themselves.").

A determination of whether, and to what extent, immunity exists is based on "a 'functional' approach to immunity law." Harlow v. Fitzgerald, 457 U.S. 800, 811 (1982).  Judicial and legislative functions require absolute immunity, but this protection is extended no further than warranted.  Harlow, 457 U.S. at 811.  Under the functional approach, the court examines the nature of functions entrusted to a particular official or class of officials and, in the context of the case presented, evaluates the method and effect of exercising those functions.  Whether a government official is entitled to absolute immunity depends upon the official's function in a particular context or proceeding.  "[I]mmunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches." Forrester v. White, 484 U.S. 219, 227 (1988).  See

_____

[2]A municipality may not assert immunity as a defense. Walden v. Carmack, 156 F.3d 861, 868 (8th Cir. 1998)

7

also <u>Cleavinger v. Saxner</u>, 474 U.S. 193, 201 (1985)("Absolute immunity flows not from rank or title or 'location within the Government,' but from the nature of the responsibilities of the individual official.").

Therefore the question raised by the defendant's discovery objections is whether the council members were functioning as either legislators or adjudicators in denying DSN's requests for a reasonable accommodation.  "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." <u>Bogan v. Scott-Harris</u>, 523 U.S. 44, 54 (1998).  "Legislation . . . looks to the future and changes existing conditions by making a new rule, to be applied thereafter to all or some part of those subject to its power." <u>Prentis v. Atlantic Coast Line Co.</u>, 211 U.S. 210, 226 (1908); <u>O'Brien v. City of Greers Ferry</u>, 873 F.2d 1115, 1119 (8th Cir. 1989)("[A] legislative act is a formulation of policy governing future conduct for all or a class of the citizenry.").  "The actions of a legislative body are considered legislative "when it is policymaking or of general application.'" <u>Fortner v. City of Archie, Missouri</u>, 70 F.Supp. 2d 1028), 1029-30 (W.D.Mo. 1999)(quoting <u>Woods v. Gamel</u>, 132 F.3d 1417, 1420 (11th Cir. 1998)).  Local legislators, including city council members, are entitled to absolute immunity from liability for their legislative acts.  <u>Bogan</u>, 523 U.S. at 54 ((holding that mayor's action of signing an ordinance into law was "formally legislative," and therefore he was entitled to legislative immunity).  However, local legislators possess only a qualified immunity when they act in an executive capacity.  <u>O'Brien v. City of Greers Ferry</u>, 873 F.2d 1115, 1119 (8th Cir. 1989).

The Council's denials of DSN's requests for a reasonable accommodation were not broadly applicable policy decisions, and they did not create new ordinances or amend existing ordinances for prospective application to all or a specific class of City property owners.  See e.g. Gorman Towers, Inc. v. Bogoslavsky, 626 F.2d 607, 611 (8th Cir. 1980)(city directors were absolutely immune with respect to enacting a re-zoning amendment that effectively undermined a developer's plan to build an apartment complex for the elderly or physically handicapped).  Rather, the Council's determination was based on applying existing City ordinances specifically to DSN and the homes it uses to provide housing for the disabled.  I therefore conclude the Council's decision was not a legislative act, and therefore the City cannot validly assert legislative immunity as an objection to discovery. See e.g. Kaahumanu v. County of Maui, 315 F.3d 1215, 1224 (9th cir. 2003)(holding that a Maui County Council decision denying a conditional use permit (CUP) to conduct a commercial wedding business on beach-front residential property was ad hoc, affected only the plaintiffs, did not bear all the hallmarks of traditional legislation, and though voted on by a body entrusted with legislative functions, was administrative and the Council members were not entitled to legislative immunity)(collecting cases); Front Royal and Warren County Industrial Park Corp. v. Town of Front Royal, Virginia, 865 F.2d 77, 79 (4th Cir. 1989)(holding that city officials were not entitled to legislative immunity where their decisions "had to do with zoning enforcement rather than rule making"); Welch v. Paicos, 66 F.Supp. 2d 138, 182 (D.Mass. 1999)(holding that town officials' denial of a permit for a subsidized housing project was a classic administrative or executive act, and not legislative in nature, where the council decided on the developer's specific petition by applying standards already set forth in ordinances); Pathways

9

Psychosocial v. Town of Leonardtown, MD, 133 F.Supp. 2d 772, 794 (D.Md. 2001)(finding that a town council's case-specific decision to rescind an occupancy permit for a mental health center was not a legislative act).

The City also claims the Council's decision was quasi-judicial in nature, and therefore absolute immunity bars the plaintiff's requested discovery.

> A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. . . . A declaration on rights as they stand must be sought, not on rights which may arise in the future, and there must be an actual controversy over an issue. . . . The form of the proceeding is not significant.  It is the nature and effect which is controlling.

Brown v. Griesenauer, 970 F.2d 431, 437 (8th Cir. 1992)(citing Prentis v. Atlantic Coast Line, Co., 211 U.S. 210, 226 (1908) and In re Summers, 325 U.S. 561, 566-67 (1945)).  Brown held that a board of city alderman, sitting as the board for impeachment of the city's mayor, performed an adjudicatory function where they "functioned like judges in that they were required to determine whether bias existed, to hear testimony and receive evidence, to evaluate the credibility of witnesses and weigh the evidence, and to make findings of fact and conclusions of law."  Brown, 970 F.2d at 437.

The November 14, 2005 hearing before the City Council was not akin to an administrative hearing before a neutral hearing officer on a contested case, with testimony and exhibits offered and credibility determinations made, thereafter culminating in a written determination of the facts and a legal opinion.  See e.g. Hinneberg v. Big Stone County Housing and Redevelopment

10

<u>Authority</u>, 706 N.W.2d 220, 223 (Minn. 2005)(relied on by the defendant herein and holding that aggrieved applicant's proceeding before a public housing authority hearing officer was quasi-judicial in nature).  There is nothing in this record to support a claim that at the November 14, 2005 Council hearing, council members "functioned as judges" to resolve a dispute. Quasi-judicial immunity does not apply to this case.

     I therefore conclude that the requested documents are not "privileged under the doctrine of absolute legislative immunity and/or quasi-judicial immunity."  See Response to Request No. 1 objection (a), filing 83, ex. 2 (Amended Response to Plaintiff's Second Set of Requests for Production of Documents).  I also note that even if the Council members could justifiably refuse discovery on the basis of a testimonial or evidentiary privilege arising from legislative or quasi-judicial immunity, it is doubtful the City can assert these privileges on behalf of the Council members.  <u>A Helping Hand, LLC v. Baltimore County, Md.</u>, 295 F.Supp.2d 585, 590 (D.Md. 2003).

> The privilege . . . is personal:  it belongs to the individual members of a local legislature, not the municipality as a whole. . . .  It follows, in this case, that it is not up to the Council to assert or waive the privilege; the councilors must do so for themselves.

<u>Helping Hand</u>, 295 F.Supp.2d at 590 (citing <u>Berkley v. Common Council of the City of Charleston</u>, 63 F.3d 295, 296 (4th Cir. 1995)(en banc); <u>Burtnick v. McLean</u>, 76 F.3d 611, 613 (4th cir. 1996)(indicating that local legislators have a "testimonial privilege" which can be waived by the individual member); and <u>Marylanders for Fair Representation, Inc. v. Schaefer</u>, 144 F.R.D.

292, 298 (D.Md. 1992)("The privilege is a personal one and may be waived or asserted by each individual legislator.")).

    2.   Relevancy of the Requested Documents.

    The City claims the requested documents are irrelevant because:  1) judicial review of the Plaintiff's claim is limited to the public record, (citing <u>Lapid-Laurel, LLC v. Zoning Bd. Of Adjustment of the Township of Scotch Plains</u>, 284 F.3d 442, 450-451 (3d Cir. 2002)); and 2) the Plaintiff's claim of discrimination does not turn on the City's intent or actual motive, (citing <u>Peebles v. Potter</u>, 354 F.3d 761, 766-767 (8th Cir. 2004)).

    In <u>Lapid-Laurel</u>, a developer claimed a township zoning board violated the FHAA by refusing to grant a reasonable accommodation that permitted it to build a 95-bed care facility for the elderly.  The plaintiff in <u>Lapid-Laurel</u> pursued a claim against the zoning authority for engaging in housing discrimination by refusing "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling."  The Third Circuit held that "federal court[s] reviewing an FHAA reasonable accommodations challenge to a decision of a local land use board . . . should limit their review to the materials that were presented to the local land use board, except in circumstances where the board prevents applicants from presenting sufficient information."  <u>Lapid-Laurel</u>, 284 F.3d at 450.

    The holdings in <u>Lapid-Laurel</u> and the cases cited therein are distinguishable from this case.  The plaintiff in <u>Lapid-Laurel</u> claimed the zoning board unlawfully denied a request for

reasonable accommodation and, in support of this claim, sought to supplement the record with additional evidence to support his position that the accommodation requested was, in fact, "necessary."  However, the plaintiff's proposed additional evidence was never presented the local zoning board in the first instance, and therefore was not relevant to prove that based on the evidence before it, the board's decision was incorrect. Lapid-Laurel held that local authorities should first be afforded the opportunity to resolve zoning matters, without interference from the federal courts and the imposition of federal liability based on a factual record never presented to the zoning board.

> "[C]ourts hearing reasonable accommodations challenges should ordinarily limit their review to the administrative record.  This rule permits local land use boards to have the initial opportunity to provide reasonable accommodations to facilitate housing for the handicapped; it also comports with the tradition in American law that land use decisions are quintessentially local in nature.

Lapid-Laurel, 284 F.3d at 451.

Unlike the circumstances in Lapid-Laurel, DSN is not seeking to expand the record and add information it never presented to the City Council.  Rather, DSN is seeking discovery of "documents created, received, reviewed, used, or otherwise accessed" by the members of the City Council in preparation for and during its decision-making processes and the November 14, 2005 hearing.  A court's consideration of such documents does not divest local authorities of their opportunity to determine, in the first instance, if a requested accommodation was reasonable or necessary, but full disclosure of all documents "created, received, reviewed, used, or otherwise accessed" does allow the

court to review everything the local authorities considered in
arriving--in the "first instance"--at their decision.

In support of its claim that the evidence in this case must
be limited to the public record already provided to DSN, the City
also cites Citizens to Preserve Overton Park, Inc. v. Volpe, 401
U.S. 402 (1971), abrogated on other grounds by Califano v.
Sanders, 430 U.S. 99 (1977).  See filing 84 (City's brief) at 7-
8.  Overton Park discussed the record which should be considered
on judicial review of agency decisions under the Administrative
Procedures Act ("APA").  In such cases the court's review is
generally limited to the full administrative record before the
agency at the time it made its decision, and discovery beyond
that record is generally not permitted.  Voyageurs Nat. Park
Ass'n v. Norton, 381 F.3d 759, 766 (8th Cir. 2004)(citing Overton
Park, 401 U.S. 402, 420 (1971); Newton County Wildlife Ass'n v.
Rogers, 141 F.3d 803, 807 (8th Cir. 1998)).

However, the City's reliance on APA case law is not
persuasive.  DSN's lawsuit is not an action for judicial review
of a federal agency decision, and this court's review is not
governed by the APA statutory scheme.  Moreover, the
administrative record in an APA case must include all documents
and materials directly or indirectly considered by
decision-makers in rendering their decision, including evidence
contrary to the decision.  Thompson v. United States Dep't of
Labor, 885 F.2d 551, 555 (9th Cir. 1989); Bar MK Ranches v.
Yuetter, 994 F.2d 735, 739 (10th Cir. 1993).  Therefore, even
assuming case law interpreting the APA is relevant to DSN's
lawsuit, all documents "created, received, reviewed, used, or
otherwise accessed" by members of the City Council in reaching
their decision to deny DSN's request for a reasonable

14

accommodation must be included in the "public record," and to the
extent the City objects to producing such information as beyond
the scope of the "public record," the objection must be denied.

I further conclude that "a district court action challenging
a zoning decision under the FHAA is a de novo proceeding in which
evidence need not have been presented to the defendant or an
administrative body in order to be considered." U.S. v. City of
Chicago Heights, 161 F.Supp.2d 819, 830 (N.D.Ill. 2001).  Since
the Council's decision is reviewed de novo, "evidence that was
not previously submitted to the City is no more 'new' or
irrelevant than any other evidence which is ever obtained through
discovery once litigation has begun." Id.  Accordingly, this
court's consideration of DSN's claims is not limited to materials
considered by the City Council, but can include additional
evidentiary materials submitted by both parties. Essling's Homes
Plus, Inc. v. City of St. Paul, 356 F.Supp.2d 971, 977 (D.Minn.
2004)(collecting cases).

Finally, citing Peebles v. Potter, 354 F.3d 761, 766-767
(8th Cir. 2004), the City claims the requested documents are
irrelevant because "Plaintiff's claim of discrimination against
the City for failing to grant the requested reasonable
accommodation does not turn on the City's intent or actual
motive." As in Peebles, however, "[t]wo means of discrimination
are relevant to this case: disparate treatment (i.e., intentional
discrimination) and the failure to make reasonable
accommodations." Peebles, 354 F.3d at 765-66.  Determining
whether discriminatory intent was a motivating factor behind the
Council's decision to deny DSN's requests for reasonable
accommodation "demands a sensitive inquiry into such
circumstantial and direct evidence of intent as may be

available."  Village of Arlington Heights v. Metropolitan Housing
Development Corp., 429 U.S. 252, 266 (1977).  Factors to consider
in evaluating a claim of discriminatory intent by government
officials include:

> (1)  the discriminatory impact of the governmental
> decision;
>
> (2)  the decision's historical background;
>
> (3)  the specific sequence of events leading up to the
> challenged decision;
>
> (4)  departures from the normal procedural sequences;
>
> (5)  departures from normal substantive criteria, and
>
> (6)  legislative or administrative history including
> contemporaneous statements by members of the
> decision-making body.

Pathways Psychosocial v. Town of Leonardtown, MD, 133 F.Supp.2d
772, 782 (D.Md. 2001)(citing Arlington Heights, 429 U.S. at 266)
and, in an action under the ADA, holding that a council member's
actions in successfully opposing an occupancy permit for a mental
health center, along with citizen remarks reflecting fears
founded in stereotypes about the mentally disabled, the council's
departure from typical endorsement practices, and the City's
stated reason for rescinding a permit "certainly indicate[d] that
a discriminatory animus drove the process.").  Irrespective of
whether the letters, e-mails, or other documents created or
received by individual council members were also received in the
offices of the City Clerk or the City Council (and thereby
included in the "public record"), such documents may lead to the
discovery of information relevant to determining if denial of the
requests for reasonable accommodation was based on intentional or
willful discrimination.

16

I therefore conclude that the record in this case is not limited to the City's disclosed "public record," and the additional documents requested in Requests Nos. 1 through 5 are relevant.  The City's relevancy objection must be denied.  See Response to Request No. 1 objection (b), filing 83, ex. 2 (Amended Response to Plaintiff's Second Set of Requests for Production of Documents).

3.   Ambiguity/Lack of Particularity.

Citing St. Paul Ins. Co. v. Commercial Fin. Corp., 198 F.R.D. 508, 514 (N.D.Ia. 2000), the City objects to DSN's Requests Nos. 1 through 5 because "[b]road and undirected requests for all documents which relate in any way to the complaint are regularly stricken as too ambiguous." St. Paul Ins. Co., 198 F.R.D. at 514.  The City argues that DSN's discovery seeks all documents "in any way relating" to the consideration of Plaintiff's requests for reasonable accommodation, and therefore the requests fail to designate the documents to be produced with reasonable certainty or particularity."  Filing 84 (City's brief) at p. 18.

Request No. 1 is the only document production request which incorporates "relating to" language.  Request No. 1 demands production of:

> All documents created, received, reviewed, used, or otherwise accessed by the members of the City Council of the City of Lincoln during the City Council meeting held on 14, 2005, in any way relating to the consideration of Plaintiff's request for a reasonable accommodation.

17

Filing 83, Ex. 2.  Simply using the words "relating to" does not
create ambiguity when, considered in its entirety, "the request
places the party upon 'reasonable notice of what is called for
and what is not.'"  St. Paul, 198 F.R.D. at 514 (quoting Parsons
v. Jefferson-Pilot Corp., 141 F.R.D. 408, 412 (M.D.N.C. 1992)).
Request No. 1 does not seek all documents "related to" the
general allegations of the plaintiff's complaint, but rather
specifically focused on the November 14, 2005 Council hearing on
DSN's requests for reasonable accommodation.  Request No. 1
adequately places the City on notice of the documents requested
by DSN, and those which are non-responsive.  The City's objection
raising ambiguity and lack of particularity must be denied.  See
Response to Request No. 1 objection (c), filing 83, ex. 2
(Amended Response to Plaintiff's Second Set of Requests for
Production of Documents).

     4.   Mootness.

     The City objected to Request Nos. 1 through 5 on the basis
of mootness, claiming that DSN's claims founded on the City's
denials of requests for reasonable accommodation were rendered
moot when the City later granted the requests.  The City's brief
does not argue this mootness objection, and acknowledges that
"DSN's claims may not be moot with respect to the issue of
damages. . . ."  Filing 84 (City's brief) at p. 17.  I therefore
consider the City's objection to discovery on the basis of
mootness abandoned.  See Response to Request No. 1 objection (d),
filing 83, ex. 2 (Amended Response to Plaintiff's Second Set of
Requests for Production of Documents).

     Finally, DSN argues that the City cannot assert a general
objection which "reserves the right to object to the requested

18

production on the basis that such production would be overly
burdensome and expensive, and further reserves the right to
assert other privileges, including but not limited to
attorney-client work product, at a later date if necessary."  The
City argues that "[t]he purpose of the reservation was to avoid
incurring unnecessary expense in locating and retrieving said
documents prior to a determination of the merits of the City's
objections based on absolute immunity and relevancy."  Filing 84
(City's brief) at p. 19.

The progression order in this case states:

> If any document is withheld from production or
> disclosure on the grounds of privilege or work product,
> the producing party shall disclose the following
> information about each such document withheld: a
> description of the document withheld with as much
> specificity as is practicable without disclosing its
> contents, including (a) the general nature of the
> document; (b) the identity and position of its author;
> (c) the date it was written; (d) the identity and
> position of its addressee; (e) the identities and
> positions of all persons who were given or have
> received copies of it and the dates copies were
> received by them; (f) the document's present location
> and the identity and position of its custodian; (g) the
> specific reason or reasons why it has been withheld
> from production or disclosure.

Filing 64 ¶ 3.  The City has failed to provide a privilege log as
required under the court's progression order, and it has produced
no evidence in support of its claims that responding to Requests
Nos. 1 through 5 will be unduly burdensome or expensive.  The
City's attempt to reserve such objections for a later time is
invalid, and the objections are waived.

To summarize, with respect to Requests for Production Nos. 1 though 5, I conclude the City's discovery objections claiming absolute immunity, lack of relevancy, lack of particularity, and mootness must be denied.  I shall order the City to fully respond to DSN's Requests for Production Nos. 1 though 5.

B.   <u>Request to Enter Land</u>.

DSN's "Request to Enter Land" seeks "entry upon the premise[s] of the City for the purpose of inspecting, copying or reproducing in some other manner, the documents contained on the notebook computers used by the members of the City Council of the City of Lincoln during the City Council meeting held on November 14, 2005."  Filing 83, Ex. 2, "Request to Enter Land."  DSN claims the City issues notebook computers to Council members to use in connection with the City's business; the council members referred to their notebook computers during the November 14, 2005 hearing on DSN's request for accommodation; and, like paper documents, the information stored within the computers and relied on by council members in considering DSN's accommodation is discoverable.  Filing 83, Ex. 1 (Moore affidavit), ¶¶ 7-9.

The City objected to the "Request to Enter Land" as follows:

(a)   "the request is overly burdensome and intrusive and an invasion of privacy as the notebook computers used by members of th City Council of the City of Lincoln may also contain personal information of the City Council member and their family members which would be exposed without an opportunity for redaction;"

(b)   "the City has not had ample opportunity to conduct a full pre-production privilege review of the requested documents due to a limited number of information technology specialists and other

20

> demands for their services, antiquated equipment, lack of software, and that compliance would be overly burdensome and expensive;" and
>
> (c) "that such inspection is not appropriate absent demonstration fo widespread destruction or withholding of relevant information by the City as the producing party."

Filing 83, Ex. 2 (Amended Response to Plaintiff's Second Set of Requests for Production of Documents).

The plaintiff offered to enter into a protective order regarding access to the computer information, but the City did not accept this offer.  The City has, however, taken measures to preserve the information on the Council members' laptops.  At the conclusion of the November 14, 2005 City Council meeting, DSN's counsel informed the City's counsel that DSN would be seeking to discover the information contained in the notebook computers and that nothing should be deleted from these computers.  The individual Council members were notified before they left the meeting that nothing should be deleted from their computers.  On Thursday, November 17, 2005, the City's Law Department instructed Information Services to obtain a GHOST image of each laptop computer, and GHOST images were thereafter obtained.  At the further instruction of the City Attorney's office, Information Services placed the following comment in the workstation comment field of Information Services' Track-It computer equipment inventory for each of the laptop computers in question:

> This laptop has a litigation hold placed on it by the City Attorney's Office.  If this machine is to be removed from its current function with the City Council Office, the City Attorney's Office must be contacted to determine disposition of this machine.  Contact Rick Peo with reference to DSN v. City of Lincoln.

Filing 85, Ex. F (Peo affidavit) ¶ 10.

The court has now ruled on DSN's motion to compel responses to Requests for Production Nos. 1 through 5.  The City's full and complete responses to those requests must include e-mail messages and other electronically stored information as required under the Federal Rules of Civil Procedure.  Williams v. Massachusetts Mut. Life Ins. Co., 226 F.R.D. 144, 146 (D.Mass. 2005)).  Since Request Nos. 1 through 5 and the Request to Enter Land potentially encompass some of the same information, the City's response to the production requests will include "the documents contained on the notebook computers used by the members of the City Council of the City of Lincoln during the City Council meeting held on November 14, 2005."  See "Request to Enter Land," filing 83, ex. 2 (Amended Response to Plaintiff's Second Set of Requests for Production of Documents).

At this time, there is no reason to anticipate the City will not comply with this court's order on Requests for Production 1 through 5, especially given the measures the City has taken to preserve the evidence for this lawsuit.  DSN has presented no evidence that the City is unwilling to produce computer-generated documents in response to discovery.  Before permitting DSN to peruse the City's laptop computers in search of what DSN deems relevant, DSN must present at least some reliable information that the City has failed to adequately perform the requested search or has withheld information responsive to its discovery requests.  Williams, 226 F.R.D. 144, 146 (D.Mass. 2005).[3]  Since

_____

[3]See also, The Sedona Conference℠, The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production (January 2004), at p. 27, comment 6.b., Illustration i., and comment 6.c. (found at www.thesedonaconference.org/content/miscFiles/SedonaPrinciples200 401.pdf)

DSN has failed to meet that burden at this time, its motion to compel a response to the "Request to Enter Land" must be denied.

C.   <u>Attorney Fees</u>.

A party should not have to file a motion to compel to receive appropriate discovery responses.  Under Federal Rule of Civil Procedure 37(a)(4):

> [I]f the motion [to compel] is granted, the court shall
> ... require the party ... whose conduct necessitated
> the motion ... to pay ... the reasonable expenses
> incurred in obtaining the order, including attorney's
> fees, unless the court finds that the opposition to the
> motion was substantially justified or that other
> circumstances make an award of expenses unjust.

The award of expenses is mandatory against a party whose conduct necessitated a motion to compel discovery unless the court finds there was a justifiable reason for opposing the motion.  <u>Cal Dive Intel, Inc. v. M/V Zaman</u>, 127 F.R.D. 213, 217 (S.D.Ala. 1989); <u>American Hangar, Inc. v. Basic Line, Inc.</u>, 105 F.R.D. 173, 176 (D.Mass. 1985).

Here, the City responded to plaintiff's motion with substantial good faith arguments supporting an immunity claim and a claim that DSN's lawsuit must be based on and limited to the public record already supplied to DSN by the City.  Though I ultimately conclude that the defendant's objections lack merit, I nonetheless find that the objections were justified and not made for the purpose of delaying discovery responses or the progression of this case.  I shall therefore not award the plaintiff its expenses and attorneys fees incurred in bringing this motion.

23

IT THEREFORE HEREBY IS ORDERED: the plaintiff's motion to compel, filing 82, is granted in part and denied in part as follows:

1.   Plaintiff's motion to compel full and complete responses to Requests 1 through 5 of plaintiff's Second Set of Requests for Production of Documents is granted. The defendant shall, within 20 days, provide responses to these requests for production by providing all responsive documents, along with a statement verifying under oath that all documents responsive to these discovery requests were provided to the plaintiff in accordance with the terms of this order;

2.   Plaintiff's motion to compel its "Request to Enter Land" is denied;

3.   Plaintiff's request for an award of attorneys fees and expenses incurred in filing this motion is denied.

DATED this 9th day of March, 2006.

                         BY THE COURT:

                         s/ *David L. Piester*
                         David L. Piester
                         United States Magistrate Judge